Mr. Garcia. May it please the court, I'm Brad Garcia for the appellant Casey Dooley and I'd like to reserve four minutes for rebuttal if I may. Yes. Thank you. The district court erred both by dismissing Mr. Dooley's Eighth Amendment claim and in labeling that dismissal a strike under the PLRA. Beginning with the merits, Mr. Dooley adequately pled that the defendants were deliberately indifferent to a sufficiently serious mental health need. Dooley's complaint alleges that he suffers from severe depression and that he has repeatedly requested appropriate treatment, including by pointing to the fact that a jury found him mentally ill. The defendant's response has never been that Mr. Dooley does not have a mental illness, much less that he's been evaluated and is receiving some other appropriate treatment. Does this determination have to be made at sentencing or is part of his claim that they should have had later examinations? It's my court must find in order for him to be classified. So it is supposed to happen at the sentencing hearing. I think in some situations it happens at a later hearing, but I want to be very clear. Right to have it determined at a later time. I think it is up to the court, the sentencing court, whether to do it as part of the sentencing. Basically the sentencing court has to make that determination. That's correct. And I want to be very clear about something up front, which is that what the judge did or did not do is not the basis for Mr. Dooley's claim. His claim is that he today has a severe mental illness. And the reason he's pointed to that jury verdict, both to the defendants and now to the courts, is to try to get someone to take him seriously. If you look at the complaint, just to make this point clear, starting on page 50 of the joint appendix, it says the plaintiff suffers from acute serious depression, sometimes bordering on manic depression, and these sufferings establish a serious medical need. And this is just going to rebut the defendant's, I think, almost exclusive argument that Dooley is pleading some kind of technical state court, state law entitlement. That takes me back to the question I asked. Shouldn't he have made a request to reopen his case and have the sentencing judge reevaluate him? Isn't it something that the prison system doesn't have to then constantly give him psychological exams, do they, to determine if he's Code D? I do think that if a prisoner comes to the appropriate staff and says, I have a severe mental illness, I have severe depression, and just quoting again, I'm suffering agonizing mental health pain and trauma, that he does need to be evaluated. And what shouldn't happen is what the jury verdict alone doesn't prove that, and that's why I'm explaining that's not the sole basis. Did he exhaust his administrative remedies, Mr. Garcia? Did he name the DOC employees in his initial grievance? So, no, but he was not required to, with one caveat. So, first, what the policy says is he has to identify those individuals directly involved. And the only defendant directly involved here is Mr. Goss, but an exhaustion argument based on that has been waived, Your Honor, as this court said in Sprill. His grievance denial acknowledges. We've discussed this previously, and I think that's a waiver of that exhaustion argument. And just put that in context, Mr. Goss is the licensed psychology manager. He's the one at this institution who's responsible for coordinating. There are other defendants, right? That's correct, Your Honor. And they weren't named in the grievance? Yes, Your Honor. And that's because they were not directly involved. And so under the grievance policy, I think as the BNIC decision explains and the magistrate judge explains, you can under 1983 hold someone liable on a version of a supervisory liability theory when they have knowledge and acquiesce in the denial. But their prison policy has to be clear. And when it says identify those directly involved, then you're saying there is a respondeat superior liability here? You can't be saying that, are you? It is certainly not a pure respondeat superior. I'm not fighting that. Okay, then it really does sound like you're trying to have it both ways. You're trying to say, hey, they didn't have to name these people. And then you're saying, you didn't have to name because they're not directly involved. And then you're saying, but they were directly involved. It's not respondeat superior. That's why we can get them. Your Honor, I'm relying on all of the liable in a 1983 action. And there's just a distinction I'm drawing between a person who was personally involved and then others who have knowledge and acquiesce in that action. So we do have to show more than respondeat superior. I agree with that. But what you're arguing is to be directly involved is not to be personally involved. No, I think those are the same. But it's just that that only applies to Mr. Goss. And so when he responds, if that grievance denial had not acknowledged Goss's own involvement, Mr. Dooley would have a problem as to Mr. Goss. Isn't that interpretation of the grievance procedure undermine completely the purpose of the grievance procedure, which is to say, these are the people I'm going to sue if I don't get relief. These are the people who are responsible for my problem. Well, that may be what the DOC has in mind as the purpose of its grievance policy. It's just not what it says. And the... They were simply reviewing what Goss had done. That's correct, Your Honor. And under... Could they be defendants in this case? Under 1983, if they have knowledge of the events and acquiesce in the actions or here inaction of a subordinate, they can be held liable. We can't just say, as in the road case, you're the governor of Pennsylvania and you should have done something. But here there are allegations that he made in each defendant individually aware of his requests and that they did not take any action to override. So that would fall in the knowledge and acquiescence bucket. So your interpretation of the grievance is it's okay for Mr. Dooley to not give Wetzel and Kaufman any heads up at all that he's coming after him and later sue him under 1983. That's not an issue? I think it's not an issue, but only because of the way the grievance policy is written. And the Pennsylvania DOC knows how to revise its grievance policy to make it clear. If it wants to kick inmates out of court on these kinds of technicalities, they've got to be clear in their presence. So that's our position on exhaustion, Your Honor. The, you know, you, I think everybody maybe got off on the wrong foot on this particular case because of the kinds of complaints that he made. It was hard to figure out what he was doing. He certainly was focusing on the, on what the sentencing judge did. And in fact, the sentencing judge did make, did look into it and made a finding at that point. But it, it seems to me that it should have started, this whole thing should have started with his making a complaint that I'm mentally ill now and I need some help and then go on from there and not get lost in this morass. I certainly understand the concern, Your Honor. And I think if you look at his complaint, it is 100% clear that his claim is I am mentally ill now and I need treatment. And I think the same can be said of the grievance. It does not say in those words, but what it says is I should be given D-code treatment. And what that means in essentially his prison bingo for I have a serious mental illness and I need mental health treatment. That's what D-code is. So the second point I do, I do want to address something you said, Your Honor, which is that the judge at the sentencing hearing rejected this or there was a separate hearing. And as I tried to explain, our claim doesn't turn on that, but it is very odd to me that they have continued to make that unsupported. One would think if that happened, they would submit a court record. They have never provided duly or a court with an indication that there was this type of separate hearing. We explained that in our opening brief. They repeated it in their appellee briefing. Does it make a difference? No indication. Does it make it, does it really make a difference? Is it significant or relevant at this time? Not, I don't think it is something to focus on, Your Honor. And that's because again, the complaint is I have a severe mental illness. I've asked for treatment. The defendants have said no and left me to fend for myself. And that is a prototypical Eighth Amendment claim. That makes me make out a state law claim, but you're making an Eighth Amendment claim here. So does, is it the case that to validly state an Eighth Amendment claim, you have to make the case that the refusal to accord Mr. Dooley decode status amounts to cruel and unusual punishment? Yes, Your Honor. Well, we have to show that the denial of mental health treatment is causing him, is a sufficient mental illness causing him suffering. The classification. It's the classification that you're complaining about that hasn't been made. That is what he wants, but the reason he doesn't want, you know, he's not doing it, you know, for fun. What he wants is mental health treatment. But the way this is framed, the way the complaint is framed is you're refusing me decode status. Now I understand you're saying, yeah, but he only wants the status so he can get treatment. But the assertion in the complaint is you're not giving me decode status. So you have to make the case that refusing him decode status is independently a constitutional violation. It amounts to cruel and unusual punishment. You can make the arguments you're making about without it, he doesn't get treatment. But that's the pitch you've got to make, isn't it? Well, Your Honor, I think they're one in the same. He's saying decode because that's the name for treatment for his illness. And just returning to the complaint, he's not relying on that. It opens the gate to what he wants, right? That status. Decode treatment in the Pennsylvania system is the name. If they even in their page five of their They say it's shorthand for identifying those inmates with the most serious mental health needs. And again, I don't want to waste your time quoting from the complaint, but it does say I suffer from depression. On page 49, I suffer agonizing mental health pain. I can't sleep. I'm paranoid throughout the day. I have nightmares because of my mental illness. This isn't a technical claim to a classification. He wants help. Right. And this means he's got to show deliberate indifference. He's got a subjective and an objective component, right? Help us with the objective component here. What is the objective? What do you have in the pleading that would satisfy the objective prong that would show that Dooley's condition is so obvious that a lay person would recognize the need for treatment? So I think it's the language I was just quoting, that he suffers from serious, manic depression and suffers all of the things I've just explained. So that if a plaintiff shows up in court, Your Honor, and says, you know, I have a psychotic disorder. I can't manage my daily life, but nobody is giving me treatment, even though I've asked. That is a prototypical Eighth Amendment claim. I get back to my original question, which is triggers the obligation on the part of the prison to classify him? He contends in his complaint, he has a jury verdict and that that's conclusive. Is there an ongoing obligation by the prison system if he says he needs mental treatment, that they then have to classify him as decode? You said earlier it has to do with the sentencing judge. Where does this obligation arise to So I want to be clear about two things. So first, Your Honor is right and I think everyone agrees that in terms of the technical counting as GBMI, what he would have needed is a finding from the judge. Okay. The record isn't clear about whether that happened or didn't. But that's the trigger. And so the second point is that I don't think so. I think this happened in 2002 and they think this helps them that this was so dated. But the point is that today he is coming to them and saying, I have a serious, serious mental illness. Please help me. And where's the provision that says that the prison system shall classify as decode people who are mentally ill? It's in the regulations. If they have a severe mental illness, there's several other ways to become decode. More to the point, Mr. Garcia, where does it say you shall classify people as decode who say they have a problem? Right. This is where I'm trying to get to with the subjective. The pleading says I'm mentally ill. I want help. But the standard is you either have to demonstrate that you've got a physician's opinion that you've got a medical condition or that you've got a condition that's so obviously serious that a lay person would recognize the need for treatment. Does that mean that just, you know, by their very nature, psychological injuries are not ones that are manifest as somebody's just standing there? Are you saying that it's sufficient to meet the objective prong of this test for a prisoner to say, I'm really messed up. I want help. That triggers it. We think we fall in the obvious to a lay person bucket and that especially mental health officials at a prison should be able to recognize the consequences of severe depression. And again, what I'm listing here. Give me from the complaint where he says something other than his assertions, right, his conclusions about what his medical condition is, something that would say, you know, that a lay person would say, oh, this guy's in his out, you know, I spent two hours in my cell banging my head against the cinder block every day. Or I'm completely unable to function by virtue of the fact that I haven't eaten a meal for three weeks. Or is there, are there any factual assertions at all that a lay person would look at and say, clearly we're talking about somebody mentally ill. Or do we just have assertion, I'm really sick? So I think the best I can do for your honor, which I think is more than sufficient, is page 49. I am suffering agonizing mental health lack of sleep. I'm paranoid throughout the day. I have nightmares and I've suffered physical abuse because of my mental illness. I think the problem here is like the district court, they're asking you to read this pro se inmate complaint extremely narrowly, but those are the words from the complaint. But you're saying though, if he had the opportunity to amend, if he had the opportunity to amend, he could. Yes, to the extent there's any problem here, he should have been given the, he can add more details by amendment. If you look at page 162 of the joint appendix, he asked for leave to amend. The district court didn't say it was, the RNR said it was futile, but the district court didn't address futility. That's correct, your honor. They simply didn't address the amendment request at all. And I think at a minimum, that's what should happen there. I see my, we obviously care about the strike issue as well, your honor, but hopefully I can address that. Maybe, maybe. Is there something you want to say about the strike? I mean, your briefing is pretty clear on it. Is there something you want to add to it? I just want the opportunity to answer any questions the court has. We, I do think it's quite clear that there was no jurisdiction to issue it, and if there was, the court got it wrong, didn't read the plain text of the statute. Well, let's hear what your opponent has to say on this, and maybe you can answer it on rebuttal. Thank you. May it please the court, Michael Scorinci from the Pennsylvania Office of Attorney General, on behalf of Appellees. Can you start, Mr. Scorinci, with the strike issue? How can it be correct for the court to render what is in effect, looks like an advisory opinion, if this ever comes up again, this is a strike? How can that be right? Well, there's nothing in the, this court has told. How about in Article 3 of the Constitution? Right. Well, Your Honor, there is a practical consequence to calling a strike now. As we outlined in our brief, the inmate is going to be more circumspect when bringing his next action. Well, you may say there's lots of great reasons to do it, but I got to bring you back to Article 3. There's no case for controversy, is there? How can there, how can it be right to say this is a strike if there's not actually a question about whether or not this is an issue that has effect on Mr. Dooley right now? Well, it, you're saying it doesn't have, it has an effect now on him in terms of the consequence that in the future he may bring an action. And is this going to be controlling in the future? The district court would have to independently confirm that a strike was called. So what, so that's where, when it becomes relevant, we'd have to independently confirm that it was a strike. It's still relevant. Again, Your Honor, we believe on the basis that it's going to affect him in the future in terms of how he brings an action. Well, isn't there a difference between a warning or advice and legal consequences of saying, of somebody saying even before it occurs that this is a strike? Or it's obvious. It shall be counted as a strike. Isn't there a difference? Shouldn't it be, shouldn't it be the last court that makes that decision? Well, the district court would be the, in the best position to know that. And this court has said in Burr that the district court should be explicit and clear. Yeah, the district court that's actually, the district court that's reviewing for whether something is a strike is in the position to know that. But you've just acknowledged in response to Judge Rendell's question that another district court someday, maybe, may have to answer that question. We don't know whether it'll ever come up. It may never come up. In terms of the three-strike rule, yes, it may never come up. Then how can it be constitutionally correct for this district court to declare it now when by definition there's no case for controversy now? It may never come up. I understand. And I think the difference is that what we're really arguing about is a labeling. The district court was just saying exactly what it had done. And saying that an action fails to state a claim is synonymous with calling a strike. Well. And the district court was in good company, Your Honor, because the 5th, 7th, and 10th circuits all do the same thing. They say that these are strikes. The 5th, 7th, and 10th circuits say you can call a strike in advance? They issue essentially a three-strike warning. They say this is a frivolous action and should constitute a strike. Because it couldn't be, right? It's dismissing a case for failure to state a claim is a strike. And that's exactly. But it's misleading. And if it's controlling, I mean, is it controlling on the, it's very confusing. It's definitely not a good practice if it's not, totally not an issue in the case that should be decided. It's just short and simple. Well, whether it's a better practice or not, Your Honors, I don't think it's a legal error to state that it's a strike at the time. How can it not be a legal error to go beyond the constitutional bounds that the court has? If it's, you know, you may, you may say, well, we're making the district court an offender for a word, but it's a pretty important word. If you're declaring in advance of an actual case or controversy, what the legal consequence is, are you not outside your judicial bounds? We don't believe so for the reasons I articulated, Your Honors, that there's a consequence to the inmate in the future. And that's exactly what the Ninth Circuit came to. Does it have any effect at all on the future district court? It has. The district court who may actually one day have to decide the issue of whether it's a strike? They will, it will have the effect that they'll be on notice that there was a strike call to independently confirm that there was a strike. And that will be the end of the matter, I believe. Okay. The district court here didn't rule that amendment would be futile. It's highly unusual to dismiss without leave to amend a pro se complaint such as this, is it not? I mean, the allegations of the harm he's suffering are pretty serious, are they not? Well, I think his claim has alleged deliberate indifference. He alleges deliberate indifference, but his claim has to be understood as the very narrow claim that he's making, which is that because the jury found him guilty of mental ill, he's entitled to be designated as a decode inmate. They've been very clear that that is not their allegation. Their allegation is that that is an element of proof, but he is not relying on that alone. He's alleged and they've I want help now because I've got problems now. The fact that I had problems then only lends credence to what I'm telling you and I've got problems now. I was mentally ill then, I'm still mentally ill. I think Mr. Dooley's allegation is not a failure to treat, it's a failure to designate as a decode inmate. And what is the obligation? I'll get back to that. What's the obligation to classify? Where does that arise and by whom? Well, first under state law, under section 9727, the jury, once there's been a guilty but mentally ill finding by the jury, there's a hearing at sentencing where the judge makes the determination as to whether the defendant requires treatment now. And that's the same determination that's made when involuntarily committing someone civilly. So you have to show there's a severe mental disability and that within the last 30 days, the defendant has attempted to inflict or inflicted serious bodily harm, but that's a mere 30 days temporal limitation. So once he's in prison, in order to be designated a decode inmate, there has to be a serious mental illness, which DOC policy defines by 10 different diagnoses. And how does an inmate supposed to get that? Just as a practical matter, how does an inmate say they get a decode status? Sure. Any inmate can request a mental health evaluation at any time and can even request to be put into a mental health unit. Now the way the DOC policy handles these claims is that, or mental health issues rather, is there's a four grade system. So A, B, C, and D. A being someone who has no history or no needs. C would be someone who has a mental health illness, but is not a serious mental illness. And the prison is often looking for these issues, even when an inmate commits an infraction, they're looking for these types of issues. Right. And I'm just trying to get to like, just as a real world practical matter, you've got Mr. Dooley saying, I need help. I need help desperately. I'm really, really badly mentally ill. His assertion is, no matter how many times I say that, no matter how many times I try to demonstrate that, that this, and I'm suffering terribly from this. Mr. Goss and the reviewing people, Whetstone Coffman are just blowing it off. Is the claim that you've got, I mean, excuse me, is the defense that the DOC has in a circumstance like that? Well, it's unfettered discretion. If Mr. Goss doesn't believe you're suffering, you're not suffering, or is there some, you know, there's no way for an inmate to get past Mr. Goss' refusal to give him a decode status? Well, the decode status is determined by DOC policy. So we'd have to have a diagnosis of one of 10 different disorders, one being schizophrenic disorder. Did someone examine him mentally to determine this? Yes, he's, I can assure you, Your Honor, that Mr. Dooley, while this isn't in the record, Mr. Dooley is currently a C-code inmate in that he has been diagnosed with persistent depression disorder. He's just not a D-code inmate. But the response of the grievances refers to the court records, which is why I asked whether there's an ongoing duty, and you said there is. It says your judge entered a temporary sentence. We've examined your court documents. We've examined your court documents. Your interpretation of your court documents should be addressed by the judge. If you do not agree with the court documents, this should be addressed with the judge. The prison is saying to him, it's all about court documents as compared to, okay, we'll get you examined for serious mental illness. Right, Your Honor, because his shouldn't have been put in the R-H-U, I'm a D-code because the jury found me guilty but mentally ill. That was his grievance, and that's what they addressed in the prison about the effect. But his statement of his current condition puts him on notice that it's not just 20 years ago that he was found this, that he's currently. Well, on that point, Your Honor, I also wanted to mention that at trial in 2002, Mr. Dooley didn't complain that he was depressed, and that's he was guilty but mentally ill. At the time at trial, he claimed to be schizophrenic. And while that's not in the record, that is in a decision out of the Eastern District from Pennsylvania. So it just highlights the frivolity of this claim that he's talking about something from 2002 that has nothing related to what's going on now. So could he amend this? In order to, he can't amend because as we've shown in our complaint, as we've shown in our because his claim is so narrow, it's based on the fact that this reading of state law, that's incorrect. So what do you mean his claim is so narrow? Are you saying he can't amend his complaint because what, the character of his initial grievance was so narrow? That, yes, Your Honor, and also the fact that he hasn't exhausted and he's named persons that were not personally involved. He did name Goss, right? He named Goss. He's a licensed psychology manager, correct. All right. So at least as to Goss, could he not amend his complaint? Mr. Goss's involvement under this record is only limited to reviewing the adjudication and the investigation of the grievance. And this court said and wrote that that's not enough to get to make a, I'm sorry, in order to have someone personally involved. Well, our case law, as Mr. Garcia points out, does put people on the hook who are acquiescing in constitutional violations. The assertion here is Mr. Goss, at a minimum, was acquiescing in constitutional violations, is refusing to pay attention here. What's wrong with that? If he's named Goss at the grievance procedure and he's named him in the complaint and he's made the assertion that I've repeatedly told these people about my mental condition, how is it at least not sufficient to get past the motion to dismiss for those allegations to be taken at face value? Well, Your Honor, I'd point out first that he did not name Goss in the grievance. I thought he had either named it or that that point had been waived and you'd conceded that. No, we never conceded that. The only notation in the grievance record is that Mr. Goss discussed this on a previous occasion with Mr. Dooley about the sentencing and the GBMI verdict. So he did name him in the grievance? He did not name him in the grievance. There's no person named at all in the grievance. And all Mr. Goss did when reviewing the grievance was mention that he had previously discussed this with Mr. Dooley. And this court has said that in order to have someone personally involved, it has to be much more specific in terms of the date, context, and time. Can you tell me what Goss's job is in this regard? Is he the person that you would first make the decision whether or not to have an order of mental examination? Well, again, Mr. Dooley is regularly seeing a psychiatrist and a psychologist. And in terms of taking someone from a D-code to a C-code, there would be a psychiatric review team that would make that determination. D-code to a D-code? Well, he was originally a D-code, Your Honor. So this is not in the record, but he was originally a D-code based on the schizophrenia, but then it was downgraded to a C-code. And now that's what he remains as, a C-code based on depressive disorder. I also want to point out just one other thing, that there's not that big a difference between a C-code and a D-code in terms of the treatment that they receive. And so what is Goss's job? He's a licensed psychology manager. No, no, but what does he... He doesn't make these decisions. He just reviews the decisions? I don't know the answer to that, Your Honor. I'm sorry. Okay. And your position on... Make a difference with respect to supervisory liability. Well, this isn't a claim of a violation of policy or practices. So I can't see a basis for the supervisory liability. Acquiescence. That's the argument. Acquiescence, but that's a term of art and it doesn't mean someone that has reviewed or investigated a grievance. No, indeed it would. If somebody had reviewed and investigated a grievance that had been put before them and it showed or there was evidence to show that that review showed a clear willful ignorance, a blindness to what was going on, that would be an acquiescence, would it not? No, Your Honor, because... Why not? Are you saying that the fact that a person holds a position where they're just reviewing insulates them from liability no matter what the evidence coming before them? My understanding from this Court's decision in Rhode is that it's not enough to allege an investigation or an adjudication of a grievance. It may not be enough. That may not be enough. There was someone who made the initial determination, the initial designation to downgrade him, and that might be the proper person. Yeah. Let's just try to be clear about this. Is the position that the Commonwealth is taking is that no matter what Mr. Goss does because of the position he holds as a reviewer, he could never be liable for acquiescence and mistreatment? I'm not going to make that representation, Your Honor, and I see my time is now up. But you're not sitting down yet until we get an understanding of this because Judge Sirica's point is an important one, which is it would make a difference for supervised reliability. You seem to be taking the position that there could never be supervised reliability on Mr. Goss's part because of the position he holds, and that seems untenable. I'm trying to find out whether that's actually the position the Commonwealth is taking. No, that's not. I'm not talking about... I don't think there's a claim here of supervisory liability, I think. But that does, in fact, seem to be exactly one of the claims. One of the claims being made, unless I'm misunderstanding Mr. Garcia badly, is that these defendants, at least Westland-Kaufman and Goss, too, and maybe Goss more directly, are responsible for this appropriate treatment, which he would get if he had a decode. I understand that to be the nature of their argument. Now, I understood you, when asked by Judge Sirica, what is the character of Mr. Goss's jobs responsibilities? Part of your answer was, in effect, it doesn't matter because he's just reviewing, so he can't be liable. Now, that prompts this question. Is it really the position of the Commonwealth that because of a position that the person has, Goss has, as a reviewer, he can never be liable for acquiescence? Because that seems like an odd position to take, and more of a reach than you have to make. I don't think there's a claim of supervisory liability here. It's not based on... I'm sorry, maybe I'm misstating myself. The claim here is not based on a violation of any policy or practice of DOC. It's based on just the review of his designation as a decode inmate. So, all right. I guess we've got as far as we'll get with that, Mr. Skinnies. Thank you very much. Okay, then we'll have Mr. Garcia back on rebuttal. Thank you, Your Honor. If I could just start briefly, I hope, with the strike issue. I think there's clearly no case or controversy for a district court to presently decide whether this is a strike. And I just want to emphasize this. It's not an insignificant issue, not that Article 3 isn't ever insignificant. What's the practical consequence of that? Assuming we agreed with you that that was an improper thing for the court to say, what's the practical fallout from that? Do we vacate? Do we remand? Do we do nothing except say that was wrong? What would we do? So, if you look at page 3 of the Joint Appendix, there is a holding in the final order that this case is a strike. I think that's what gives rise to the jurisdictional issue. So, the remedy there would just be to vacate that portion of the order and make clear the court had no jurisdiction to issue it. And so, related, you know, one of the reasons you don't resolve issues prematurely is so you don't get them wrong. Right. And we think it's... Okay. So, good. That answers that question. Now, why don't you hit the points that Mr. Scanisi was making that, first, there's nobody named at all in the grievance, and therefore, there's a failure to exhaust. And even if there hadn't been a failure to exhaust, there's not a... Not to put too fine a point on it, but I take the argument to be something to the effect of you're being invited to weigh in and start second-guessing prison administrators when people are doing the best they can to deal with Mr. Dooley's election. Yes, Your Honor. So, I'll start with the grievance, and I agree nobody is named in that grievance. We had a colloquy on this earlier, and I think as to Goss, it is clear they waived that exhaustion requirement. When Goss implicates himself, he acknowledges his own role when he denies the grievance. And then, again, we go back to this parsing of their policy as to whether you have to name Kaufman and Wetzel if you are pursuing them on a knowledge and acquiescence theory. We think it's... Yeah, that would be repetitive, so... Yes. So, I think, well, stepping back, Your Honor, two points. First, the number of questions on which there is no clarity and the number of times references were made to things that are not in the record illustrates that at a minimum, Mr. Dooley should be given leave to amend. And I think that respectfully to the district court here, it also illustrates that what is all too common in these kinds of apply the normal rules of pleading. As we went through, this claims clearly that I have severe depression, I can't sleep, I'm paranoid, I'm suffering, and nobody is paying attention. And I do think these kinds of extra record beliefs and fundamentally a belief that he doesn't actually have a severe mental illness is what drove the decisions below and what's driving the defendant's argument here. That's simply not proper, and the case has to at least be amended. Okay. Thank you very much, Mr. Garcia. Thank you, Mr. Scrancy. You've got the case under advisement.